BEFORE THE FIRST DIVISION, SEPTEMBER 11, 1961

No. 66043.—A. Zerkowitz & Co., Inc. *v.* United States, protests 60/7384, etc. (San Francisco and New York).

MOLLISON, Judge: The merchandise the subject of the protests enumerated in the attached schedule consists of tennis oxfords and basketball shoes, both with cotton canvas uppers and rubber soles. The tongues in the imported footwear are made of leather, and there is no question but that, in each case, the value of the leather exceeds the value of any other component material of the item, and of the uppers, and that it is properly classifiable under the provision contained in paragraph 1530(e) of the Tariff Act of 1930 for footwear, including athletic or sporting boots and shoes, wholly or in chief value of leather.

However, in the Torquay Protocol to the General Agreement on Tariffs and Trade, reported in T.D. 52739 (86 Treas. Dec. 121), the Presidential proclamation effectuating which was in force at the time of importation of the footwear here involved, the rate of duty applicable to footwear in chief value of leather was reduced from the original tariff act rate of 20 per centum ad valorem to 10 per centum ad valorem, if the said footwear was "men's, youths', or boys' " footwear. Certain exceptions to that reduction were stated, none of which are material here.

The collector of customs determined that the footwear involved was not men's, youths', or boys' footwear and assessed duty at the rate of 20 per centum ad valorem thereon under the provision in paragraph 1530(e), as unmodified by trade agreement provisions. The plaintiff contends that the involved footwear is within the designation of "men's, youths', or boys' " footwear, as contained in the tariff provision, as modified by the Torquay protocol, and, on that basis, issue has been joined.

There seems to be no question but that in the United States there are two series of footwear sizes, running from 1 to 13 in the small, or first, series, and from 1 to 13 and larger in the large, or second, series. Note *Stewart Romero Boot Shop* v. *United States*, 26 Cust. Ct. 278, C.D. 1336, at page 282.

Further, there seems to be no question but that footwear of the type here in issue is made on lasts, which are blocks or forms shaped like feet, with the use of which shoes and other footwear are made.

Both parties are in agreement that the term "men's, youths', or boys'," as used in the trade agreement modification of paragraph 1530(e), *supra*, refers to members of the male sex.

Plaintiff contends that the tariff term "Boots, shoes, or other footwear (including athletic or sporting boots and shoes), made wholly or in chief value of leather, not specially provided for * * * if men's, youths', or boys' " has reference to footwear made in a male style and/or on a male last, i.e., that it is descriptive of a style, shape, and construction of footwear designed for the male foot. Plaintiff contends that all of the tennis oxfords at bar are of that character and that the fact that some, any, or all of such footwear may actually be sold to and used by girls or women is immaterial in the determination of its tariff classification.

Plaintiff contends that all of the basketball shoes here involved are of the heavy-sole type, and that by style, shape, and construction are designed for males, and, in fact, are used only by males.

While defendant's basic contention appears to be that the tariff term quoted above refers to the *use* of the footwear and not to its physical character, its

position with respect to the nature and effect of that use is not quite clear. At the beginning of the case, counsel for the defendant indicated that it considered the tariff term to be limited to footwear used *only* by men, youths, or boys; that all of the footwear here involved is worn by women or girls as well as by men, youths, or boys; and that, consequently, it is not within the scope of the tariff term. This seems to be the gist of the following statement made by defendant's counsel at the opening of the case:

Now, we also contend that if footwear is used by both boys and girls then it is not "boys'" but it is "other than boys'" because it's used by both. If it's used by men and women it is no longer "men's" but it is "men's and women's," so that it is "other than men's."

However, in the brief filed on behalf of the defendant, it appears that its contention is that it is the *chief* use of footwear which determines whether it is men's, youths', or boys', or some other kind of footwear, and that the chief use of all of the footwear involved was to be worn by women or girls.

When the case was called for trial, counsel for the plaintiff offered in evidence six tennis oxfords and offered to stipulate that they were representative of the tennis oxfords imported by the importer herein, and involved in these cases, as to shape, design, last, and material. This offer was accepted by counsel for the defendant, and the articles were received in evidence as plaintiff's exhibits 1 to 6, inclusive.

They all appear to be specimens of a type of footwear commonly known as a low-cut sneaker. They have a rounded, as distinguished from a tapered or pointed, toe, and a comparatively heavy or thick rubber sole, while the uppers are of canvas. The style, shape, and construction seem to be the same in all of the exhibits, and the sizes run from size 13 (exhibit 6) in the small, or first, series to size 10 (exhibit 2) in the large, or second, series. Exhibits 1, 2, and 4 have white uppers, exhibit 3 has a blue upper, exhibit 5 has a red upper, and exhibit 6 has a black upper. The soles of all the exhibits are of grey rubber, except that of exhibit 6, which is of black rubber.

Counsel for the plaintiff also offered an article in evidence as representative of the basketball shoes involved. Unfortunately, the article offered in evidence was in size 8½ in the large, or second, series, which is apparently a size not in issue, all of the basketball shoes which are in issue being in sizes in the small, or first, series. Apparently, the article was offered to illustrate the shape and construction of the basketball shoes which are in issue, it being plaintiff's contention that all basketball shoes of that type, regardless of size, are designed for males. However, there was no stipulation in the case of this article that it was representative of the basketball shoes in issue, nor was the fact established otherwise.

Received in evidence as plaintiff's exhibit 7, the article may be described as what is commonly known as a high-cut sneaker, with a rounded toe and heavy or thick rubber sole and a lace-to-toe canvas upper.

Also offered in evidence was a similar basketball shoe, except that it has a white upper and is in size 3 in the large, or second, series. No objection to its receipt in evidence having been made, it was admitted in evidence as plaintiff's illustrative exhibit 9, and was apparently offered to illustrate a smaller size of the basketball shoe, represented by exhibit 7. It was, however, not connected with the importations at bar.

The oral evidence offered by the plaintiff consists of the testimony of two persons of long experience in the sale in the United States of footwear of the two types represented by exhibits 1 to 6, inclusive, and exhibits 7 and 9, and the

testimony of a boot and shoemaker engaged in the custom trade, shown to have had experience in the making of lasts for shoes.

Both of plaintiff's witnesses who were engaged in the shoe selling business stated that the wholesale footwear trade distinguishes between a male and a female shoe, and named style as the primary indicator of which type any given shoe fell into. However, they were unable to say, from an examination of plaintiff's exhibit 1, a low-cut sneaker marked as size 7, whether it was a male or female shoe, but said that it could be worn by either men or women.

Both witnesses stated that another method of determining the question of whether a shoe was a male or female shoe would be to measure the last on which the shoes were made.

While neither witness was examined on direct examination as to the remaining exhibits of tennis oxfords, exhibits 2 to 6, inclusive, on cross-examination, one witness stated that he now sold merchandise represented by exhibits 1 to 6, inclusive, in his three retail stores and stated that such stores were confined to the sale of women's and children's shoes, and did not sell boys' shoes over size 6 in the small, or first, series.

As to exhibit 7, neither witness would state that all high-topped sneakers or basketball shoes were regarded in the trade as shoes for males, saying that some basketball sneakers were made for girls or women also.

It developed that plaintiff's third witness, the custom boot and shoemaker, had made a plaster mold of an imported tennis oxford seemingly in size (7 in the large, or second, series) and in all other respects identical with plaintiff's exhibit 1, except that the canvas upper is red, while the upper of exhibit 1 is white. From the mold, the witness had made a wooden model or last. The shoe from which the mold was made was received in evidence as plaintiff's exhibit 16, the mold as exhibit 17, and the last as exhibit 18.

Similar molds and lasts were made by the witness of domestic tennis oxfords, identified as a men's size 7 and a women's size 7, and they were received in evidence as follows: The men's domestic tennis oxford as exhibit 11, the mold made therefrom as exhibit 10, and the last made from the mold as exhibit 12; the women's domestic tennis oxford as exhibit 13, the mold made therefrom as exhibit 14, and the last made from the mold as exhibit 15.

Counsel for the parties stipulated that shoe or footwear last measurements are defined as follows:

* * * the ball measurement is a line running completely around the last intersecting the joints of the large and small toes. The waist measurement is a line running completely around the last approximately one inch in back of the ball measurement halfway between the cone and the base of the last. The instep measurement is a line running completely around the last approximately one inch in back of the waist measurement halfway between the cone and the base of the last. The length measurement is a straight line running from the forward end of the toe to the rear of the heel. The width measurement is a straight line running across the bottom of the last measured at the ball or the widest part of the foot. [Tr. p. 13.]

Plaintiff's witness measured and testified as to the ball, waist, and instep measurements of the three lasts received in evidence as exhibits 12, 15, and 18, and the court has measured the lasts in accordance with the length and width definitions as given above. The results, in inches, are as follows:

| Measurement | Ex. 12 (Men's domestic) | Ex. 15 (Women's domestic) | Ex. 18 (Imported) |
|---|---|---|---|
| Ball | 8¼ | 7⅝ | 8 |
| Waist | 8¾ | 7⅞ | 8⅝ |
| Instep | 9 | 8½ | 9 |
| Length | 10½ | 10 | 10⅛ |
| Width | 3⅜ | 3 | 3¼ |

At the conclusion of his testimony, the witness was asked, referring to the shoes which would be produced with the use of a last of the measurements of exhibit 18:

In your opinion who would wear that type of shoe?

and he answered:

In my opinion this shoe, sneaker, can fit boys or girls. [Tr. p. 60.]

Without going into any detail concerning the evidence offered by the defendant, it may be said that it did not, in any material way, contradict the evidence offered by the plaintiff, and, in some ways, corroborated it. In a general sense, it was directed toward establishing the fact that tennis oxfords, such as are represented by exhibits 1 to 6, inclusive, are sold to and worn by women and girls as well as by men. This fact, which was also established by plaintiff's witnesses, is not controverted by the plaintiff.

With respect to the tennis oxfords represented by exhibits 1 to 6, inclusive, plaintiff argues, in its brief, that the rounded, box-like toe and grey, heavy-treaded or corrugated sole are demonstrative of a male style. It is pointed out that exhibits 8, 13, and 19, offered by plaintiff as representative of female tennis oxfords, all have a tapered toe and yellow pebbled soles.

We do not think that the argument as to style is supported by the evidence. We note that plaintiff's exhibit 11, also offered by plaintiff as representing a male tennis oxford, has a tapered toe and pebbled sole, and it would appear that these are not characteristics sufficiently definite to denominate any given shoe a male or female shoe. It is noted that neither of plaintiff's witnesses who were experienced in the sale of tennis oxfords could determine from a visual examination whether plaintiff's exhibit 1, representative of the imported tennis oxfords, was a male or female shoe. We do not consider that plaintiff has sustained its argument that the style of exhibits 1 to 6, inclusive, is definitely male.

Plaintiff contends, and its witnesses so testified, that another method by which the question of whether a given shoe is male or female in character is by the determination of the measurements of the last on which it was made, and the parties, as hereinbefore indicated, have stipulated the definitions of such last measurements. Plaintiff argues that the comparison (hereinbefore set out) of the measurements of the last, exhibit 18, made from a tennis oxford, exhibit 16, similar to exhibit 1, which, in turn, is stipulated to be representative of the tennis oxfords here in issue, shows that, "for all practical purposes," it is the equivalent of a domestic male tennis oxford of the same size, exhibit 11, rather than a domestic female tennis oxford, exhibit 13, of that size.

We think the argument and the proof adduced in support of it, are ingenious, but are of the opinion that they are inconclusive. It is true that, in most respects, the measurements of the imported tennis oxford are much closer to those of the domestic male tennis oxford than to the domestic female tennis oxford, the exception being in length, in which measurement the imported oxford was closer to the domestic female oxford.

While there is some testimony to the effect that one-eighth of an inch does not make any difference in the measurement of a last for the determination of shoe characteristics, we are of the opinion that the discrepancies between most of the measurements of the last made with the use of the imported shoe and of the last made with the use of the domestic male shoe are too large for us to conclude that the imported shoe was made on a male last. There is evidence that lasts vary from manufacturer to manufacturer and between those made by the same manufacturer for different styles of shoes. It would seem that, unless there was some recognized standard of measurements of male lasts of a given size to which reference might be had, it would be necessary to show

the measurements of a sufficient number of lasts identified as male lasts of the size and style in question to reasonably conclude the ranges of measurements which should be found in a male last.

The evidence offered at the trial seems to suggest that some lasts, particularly those for tennis oxfords, are so made that the shoes made with their use are suitable for and are worn by members of both sexes—in other words, that such a last might not necessarily be specifically identified with either male or female shoes. In this connection, the testimony of plaintiff's own witness, who made the last of the imported shoe, to the effect that shoes made on that last "can fit boys or girls," is particularly noteworthy.

As to the basketball shoes in issue, as has been stated, plaintiff contends that all basketball shoes of the kind imported are masculine in style. However, while two basketball shoes were received in evidence as exhibits 7 and 9, and witnesses were examined concerning them, it was not established that they are representative of the basketball shoes actually imported herein, or that the testimony given with respect to them is applicable to the basketball shoes actually imported.

On the record made, we are satisfied that the plaintiff has not established that the tennis oxfords and basketball shoes in issue were made on male lasts so as to be characterized, under plaintiff's own theory of the case, as men's, youths', or boys' footwear.

The claims in the protests are, therefore, overruled, and judgment will issue accordingly.